UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KYRON HODGES,

                               Plaintiff,

                   -against-

KIANA MORRISON AND GOLDEN FEATHER
CIGARETTE EXPRESS,

                              Defendants.
----------------------------------------------------------------X

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

CV 08-76

(Wexler, J.)

APPEARANCES:

    WILLIAM T. MARTIN, ESQ.
    Attorney for Plaintiff
    945 East 226th Street
    Bronx, New York 10466

    PETER C. KAITERIS, ESQ.
    Attorney for Defendants
    629 Route 112, Suite 1
    Patchogue, New York 11722

WEXLER, District Judge

      This is a breach of contract action commenced by Plaintiff Kyron Hodges ("Hodges" or "Plaintiff") against Defendants Kiana Morrison ("Kiana Morrison") and Golden Feather Cigarette Express ("Golden Feather") (collectively "Defendants"). Plaintiff seeks payment pursuant to a contract allegedly entered into among the parties. Defendants, on the other hand, deny the existence of any such contract. A non-jury trial of all claims was held before this court. The parties have submitted proposed findings of Fact and Conclusions of Law. The court has considered those submissions and this constitutes the Court's Findings of Fact and Conclusions of Law.

# FINDINGS OF FACT

I. <u>The Parties</u>

1. Plaintiff is Kyron Hodges, an individual residing in the State of Pennsylvania.

2. Defendant Kiana Morrison is an individual who is a Native American member of the Unkechaug Nation.

3. Kiana Morrison resides on the Poospatuck Indian reservation in Mastic, New York (the "Reservation").

4. Defendant Golden Feather Cigarette Express ("Golden Feather") is a company that was, at all relevant times, engaged in the business of selling cigarettes from a trailer, and later, a building, located at the Reservation.

5. Kiana Morrison is the owner of Golden Feather.

II. <u>The Parties' Meeting and the Alleged Contract</u>

6. Kiana Morrison first became acquainted with Hodges sometime during the summer of 2004. Kiana Morrison was introduced to Hodges by her husband, Shawn Morrison.

7. At the time that Shawn Morrison met Hodges, Shawn Morrison, recently released from a period of incarceration, was living in halfway house in Brooklyn, New York.

8. Shawn Morrison met Hodges at a barber shop located on Myrtle Avenue in Brooklyn, New York, where Hodges worked.

9. Hodges and Shawn Morrison discussed the cigarette business of Golden Feather. In particular, Hodges discussed the possibility of doing work for Golden Feather.

10. Hodges describes the work he proposed to do for Golden Feather as work in connection with the start-up of an internet sales division of Golden Feather.

11. Kiana Morrison agrees that the issue of Hodges helping to launch an internet division of Golden Feather was discussed. She testified, however, that those talks never resulted in any agreement, or work performed pursuant thereto.

12. On or about July 22, 2004, Kiana Morrison signed a one page hand-written document that is before the court as Plaintiff's Exhibit 1 (the "Document"). The Document states as follows:

> July 22, 2004
>
> I, Kiana N. Morrison, owner of Golden Feather Cigarette Express located at 13A Squaw Lane Mastic NY 11950.
> Agree to pay Mr. Kyron Hodges ten percent (10) of my net income once a month for a total of sixty months (60), upon completion of the sixty months (60), Mr. Hodges will receive a one time fee of ten percent (10) of Golden Feather' gross income.

13. The Document is signed by Kiana Morrison.

14. The Document bears the signature of a notary, Frank Guobadia, and his notary stamp. The notarization does not bear a date separate, or in addition to, the date on the Document. Additionally, the Document contains no language stating that Kiana Morrison "came before" the notary. Frank Guobadia did not testify at trial.

15. Rosita Powell, an employee of the store where the Document was alleged to have been notarized, testified that she witnessed Kiana Morrison, Shawn Morrison and Hodges come into her store on July 22, 2004. She further testified that she observed the Document being signed and notarized.

16. Kiana Morrison acknowledges that she signed the Document, but testified that she was never in Brooklyn.

17. The court finds the testimony of Rosita Powell to be credible.

18. The court finds that Kiana Morrison signed the Document before the notary as stated therein.

19. Hodges did not sign the Document.

20. Hodges testified that the Document is a contract evidencing the parties' agreement for Hodges to perform a variety of services to launch the internet business of Golden Feather. He further testified that the Document entitles him to a monthly payment of 10% of the net income of Golden Feather for a period of 60 months and, thereafter a lump sum payment of 10% of that company's gross income.

21. Hodges testified that it was his responsibility to invest $15,000 in the business of Golden Feather.

22. There are no documents evidencing a lump sum $15,000 payment to Golden Feather by Hodges.

23. Hodges testified that his investment in the business of Golden Feather took the form of direct payment of expenses such as new computer equipment, and the periodic payment of ongoing business expenses.

24. Hodges made no effort to contact Defendants with respect to the alleged contract between 2004, and the commencement of this lawsuit in 2008. During that time, he neither sought direction regarding his duties, nor an accounting of Defendants' profits, nor payment for services rendered.

25. There was no evidence presented at trial of any ongoing internet sales division of Golden Feather. The evidence at trial showed that Hodges' business relationship with Golden Feather consisted of the performance of unspecified delivery services, and his purchase of bulk quantities of cigarettes for resale. The latter

activity ceased when Hodges was arrested by Suffolk County authorities for the illegal sale of untaxed cigarettes.[1]

26. Defendants acknowledge that between 2004 and 2005, Hodges did certain work for Golden Feather but state that the work performed was delivery work through Hodge's company, "Headliners Delivery Services."

27. Documentary evidence admitted at trial, as described below, evidenced payments made by Golden Feather to Hodges.

28. On September 1, 2004, Golden Feather paid $1,000 to Headliners Delivery Services. The memo on the check refers to payment being made for "Delivery service for 8/30 - 9/3/04."

29. Golden Feather issued an IRS Form 1099 to Hodges for 2004. That form reflects a payment to Hodges in the amount of $10,000, as non-employee compensation.

30. The court finds that the payments made to Hodges are consistent with individual instances of work performed by Hodges, and not consistent with payments reflecting any percentage of profits of Golden Feather.

31. While the court finds that the parties discussed the possibility of Hodges performing services in connection with the launch of an internet-based division of Golden Feather, the court find that the parties never reached any particular agreement as to the services to be performed by Hodges in connection with those discussions.

---

[1] Outside of any effect on Hodges' credibility, the court expresses no opinion as to the legality of the sale of cigarettes by Golden Feather. That is an issue that was not before the court in this matter, and in light of the court's holding, has no effect on the outcome of this case.

32. Hodges presented evidence at trial of Kiana Morrison's income. Hodges made no effort at trial to separate any income of Golden Feather's Reservation business from income related to any internet-based business conducted by the company

33. The court does not find any performance by Hodges consistent with the launch of any internet business of Golden Feather.

## CONCLUSIONS OF LAW

I. Jurisdiction and Venue

34. This court has jurisdiction over the claims raised herein under 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. §1391(a).

II. Breach of Contract: Legal Principles

35. In this breach of contract action, arising under the laws of the State of New York and commenced pursuant to this court's diversity jurisdiction, the court applies New York law. See Abeles, Inc. v. Creekstone Farms Premium Beef, LLC., 2010 WL 446042 *1 n.2 (E.D.N.Y. 2010).

36. To prevail on a claim for breach of contract under New York law, a plaintiff bears the burden of proving: (1) existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000) (citations omitted); Rockland Exposition, Inc. v. Alliance of Automotive Service Providers, 2009 WL 1154094 *9 (S.D.N.Y. 2009).

37. To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound. Leibowitz v. Cornell

University, 584 F.3d 487, 506 (2d Cir 2009); Register.com v. Verio, Inc., 356 F.3d 392, 427 (2d Cir. 2004) (citations omitted).

38. The issue of mutual assent "considers whether there has been a meeting of the minds between the parties on all essential terms of the agreement." Aderman v. Niagara Wheatfield Cent. School Dist., 2003 WL 21382894 *2 (W.D.N.Y. 2003); see Schurr v. Austin Galleries of Ill., 719 F.2d 571, 576 (2d Cir.1983) (internal citations and quotation marks omitted); Hines v. Overstock.com, Inc., 668 F. Supp.2d 362, 366 (E.D.N.Y. 2009); Express Indus. and Terminal Corp. v. New York State Dep't of Transportation, 693 N.Y.S.2d 857, 860 (1999).

39. A party alleging existence of a contract must not only prove the contract's existence, but also the terms thereof. Dreyfuss v. Etelecare Global Solutions-U.S., Inc., 2009 WL 30041111 *3 (2d Cir. 2009).

40. Thus, a contract is formed when the contracting parties express an intent to be bound, and where the essential terms of the agreement have been agreed upon. International Minerals and Resources, S.A. v. Pappas, 96 F.3d 586, 593 (2d Cir. 1996); see Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp.2d 405, 412 (S.D.N.Y. 2009) (party alleging existence of contract must show facts surrounding contract formation including major contractual terms, and mutual assent); International Paper Co. v. Suwyn, 966 F. Supp. 246, 254 (S.D.N.Y.1997) (contract enforceable if there is a "meeting of the minds between the parties regarding material elements of the agreement"

41. Proof of definite contractual terms is essential, because it is only through such proof that a court may interpret the agreement. See Brookhaven Housing

7

Coalition v. Solomon, 583 F.2d 584, 593 (2d Cir. 1978) ("to consummate an enforceable agreement, the parties must not only believe that they have made a contract, they must also have expressed their intent in a manner susceptible of judicial interpretation") (citations omitted).

III. Plaintiff Has Not Sustained His Burden of Proving the Existence of a Contract

42. At the core of this case is the issue of whether or not the parties entered into a binding contract and, if so, the terms of their agreement.

43. The court holds that Plaintiff has sustained neither the burden of proving the existence of a contract, nor its terms. Although the court has found that Kiana Morrison signed the Document, this finding does not compel a holding that the Document is a binding contract entered into among the parties.

44. Kiana Morrison testified that she signed the document and took it back to the Reservation, where it remained on her desk, pending further consideration. Hodges, on the other hand, testified that the contract became effective upon Ms. Morrison's signature.

45. The parties' versions are conflicting, and Hodges came nowhere near to sustaining the burden of proof required for the court to accept his version. This is not only because of the court's finding of a lack of credibility, but also because any evidence of "performance," and/or payments made to Hodges, cannot be properly attributed to the alleged contract. Instead, as found by this court, such payments are attributable to particular instances of work done by Hodges for Golden Feather.

46. The Document fails to constitute a contract for additional reasons. It is not signed by Hodges, and recites no required action on his part. Instead, it recites only a unilateral obligation to pay a percentage of profits of "net income."

47. In addition to failing to specify any performance on the part of Hodges, the Document fails to include other essential terms necessary to interpretation, and Hodges failed to prove conduct showing such terms. In particular, there is no mention of whether the "net income" referenced in the Document is that of the proposed internet business (of which there appeared to be none) or that of the Reservation business of Golden Feather (which was considerable).

48. The court recognizes that failure to specify every term is not necessarily fatal to a finding of a contract, and there are cases where there is sufficient evidence to for a court to nonetheless enforce a contract. See United States v. Bedford Assocs., 657 F.2d 1300, 1310 (2d Cir. 1981). This, however, is not such a case. Instead, this is a case where even the existence of a contract, has not been proven – much less the essential terms thereof.

## CONCLUSION

Defendants are entitled to judgment as to Plaintiff's claim. The Clerk of the Court is directed to close the file in this matter.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
July 19, 2010